The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, with the exception of minor modifications.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all times relevant to the issues in this case, an employer-employee relationship existed between plaintiff Genell Elmore and defendant A. Klein Company.
3. Plaintiff sustained an admittedly compensable injury by accident on May 19, 1992 which was the subject of a Form 21 approved by the Industrial Commission on November 6, 1992.
4. The plaintiff's average weekly wage as reflected on the Form 21 was $254.98, yielding a compensation rate of $170.00.
5. At one time, plaintiff did return to work at a reduced wage. The issues before the undersigned are whether plaintiff is entitled to any temporary total disability, temporary partial disability, or total permanent disability.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. All parties being properly before the Commission and subject to and bound by the North Carolina Workers' Compensation Act, the Industrial Commission has jurisdiction over this claim.
2. On the date of hearing plaintiff was 55 years old. She is a widow who lives alone. She has two children.
3. Plaintiff completed the 11th grade. However, a psychological evaluation done in October, 1994 showed plaintiff's intelligence in the low average range. In academic achievement, she scored between a 3rd and 4th grade level in arithmetic, reading, and spelling. She had poor visual memory.
4. The medical evidence indicates plaintiff probably had a pre-existing congenital weakness in her lumbar spine which was aggravated by her accident of May 19, 1992. Following the accident, plaintiff was diagnosed with spondylolisthesis at L5 with associated spinal stenosis. As a result of her spinal injury, plaintiff eventually needed surgery. In October, 1992, orthopedic surgeon Paul Brown performed a lumbar decompression and stabilization, inserting plates and screws.
5. Subsequent to her surgery, plaintiff continued to complain of pain in her lower back, with some intermittent discomfort in her leg as well. When her pain continued, Dr. Brown assessed her with post-laminectomy syndrome. Her pain could continue for an indeterminate amount of time, even for her entire lifetime.
6. In early 1993 plaintiff went through a work hardening program. Following her rehabilitation program, plaintiff returned to work for the defendant around July 19, 1993, working approximately four hours per day. She worked on a line straightening valentine boxes as they moved down a conveyor belt. Plaintiff continued to do this job until late September or early October, 1993 when she stopped work again due to continued pain.
7. In September 1993 plaintiff fell while going up the steps to the building at work. Her job had been aggravating her back, and, when she fell, her back was aggravated further such that she went back to see Dr. Brown for her pain. She went out of work again.
8. In February and March 1994 plaintiff again went through work hardening. This involved both physical therapy and occupational therapy. Plaintiff found that the exercises gave her temporary relief from pain.
9. On March 30, 1994 Dr. Brown noted that plaintiff was doing much better after her work hardening program. He felt that she was capable of returning to light duty and released her for return to work on or about April 25, 1994. Plaintiff did return to work for a few days in April. Apparently, she was working on the valentine box line again. She found that this aggravated her back, and she stopped work.
10. On June 2, 1994, plaintiff's physical therapist, Caroline Gaver, did a job site evaluation at defendant-employer's business while plaintiff was present. Ms. Gaver evaluated the position of box inspector in which the employee stands or sits by a conveyor belt and checks the valentine boxes as they pass. The box inspector rubs the edge of the box to be sure it is smooth and examines the box to make sure it is symmetrical and closes. This position requires very little reaching. Ms. Gaver felt this position would be appropriate for plaintiff.
11. In October 1994, plaintiff again returned to the belt line job, apparently as an inspector. She tried to work for three or four weeks, but again found that it aggravated the pain in her back and she had to stop work.
12. As of October 1994, Dr. Brown released plaintiff at maximum medical improvement. Dr. Brown concluded that she had a 25 percent permanent impairment of her back.
13. Dr. Brown believes that the light duty job as a box inspector is within plaintiff's physical capability. However, he also acknowledges that her chronic pain could interfere with her ability to concentrate and do sedentary work.
14. In October 1994, plaintiff made a reasonable effort to return to gainful employment. Even though the light duty job offered by defendant may have been within plaintiff's physical capabilities, and doing the job would not have caused further injury, plaintiff was not able to do the job because of her chronic pain which was aggravated by the job. Defendants offered no evidence that there were other jobs available which plaintiff could have obtained and performed given her age, education, background, and skills.
15. Defendant terminated plaintiff's ongoing temporary total disability benefits in June, 1994 and plaintiff has not received any benefits since that time. The greater weight of the evidence establishes that plaintiff has been incapable of gainful employment since her benefits were terminated in June, 1994.
16. There is a 50 percent chance that removal of the plates and screws from plaintiff's back would give her some pain relief.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 19, 1992, plaintiff suffered a compensable injury by accident. N.C.G.S. 97-2(6).
2. Plaintiff is entitled to compensation at the rate of $170.00 per week beginning in June of 1994, when benefits had been terminated, and continuing barring a change of condition, return to work, or further order of the Industrial Commission for the temporary total disability she has sustained as a result of this injury by accident. N.C.G.S. § 97-29.
3. Plaintiff is entitled to have defendant provide ongoing medical treatment which may be reasonably necessary to give her relief from pain or lessen her disability. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff compensation at the rate of $170.00 per week from June of 1994 and continuing, barring a change of condition, return to work, or further order of the Industrial Commission for the temporary total disability she has sustained as a result of this injury by accident.
2. Defendant shall provide ongoing medical treatment which may be reasonably necessary to give plaintiff relief from pain or lessen her disability.
3. A reasonable attorney's fee in the amount of 25 percent of the compensation awarded plaintiff under this opinion and award is approved for plaintiff's counsel. Twenty-five percent of the compensation accrued and due plaintiff shall be deducted and paid directly to her attorney. Thereafter, every fourth compensation check shall be forwarded to plaintiff's attorney as attorney's fee.
4. Defendant shall pay the costs of this appeal.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER